AMÉRICA DUPREY VIUDA DE LÓPEZ, demandante y apelante, *v.*
MÉNDEZ HERMANOS & Co., S. en C., demandados y ape-
lados.

No. 4206.—*Sometido:* Enero 18, 1928.　*Resuelto:* Enero 21, 1929.

*J. Texidor* y *D. Pellón,* abogados de la apelante; *González Fagundo
& González Jr.,* abogados del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

En abril de 1924 el oficial de sanidad del distrito notificó a Carlos González, subarredatario de una panadería, que el inspector de sanidad local no expediría licencia alguna para utilizarla hasta tanto se hiciera una reconstrucción completa de la misma de acuerdo con el reglamento de sanidad No. 73 sobre panaderías.

En abril 7 González refirió esta comunicación a Méndez Hermanos & Co., como arrendatarios. En abril 8 Méndez Hermanos & Co., enviaron copia de dicha carta al Roig Commercial Bank, por cuyo conducto, como agente de la arrendadora, se pagaban los cánones mensuales. Al mismo tiempo Méndez Hermanos & Co. informaron al banco que de conformidad con los términos de la segunda cláusula contenida en el arrendamiento, los arrendatarios estarían exentos del pago de la renta durante todo el tiempo que la panadería permaneciere cerrada.

Al día siguiente el banco informó a los arrendatarios que su autoridad se limitaba al cobro de los cánones y además que escribirían una carta a la arrendadora con el fin de que ella resolviera esta cuestión.

En diciembre de 1924 la arrendadora entabló una acción sobre rescisión de contrato de arrendamiento, cobro de cánones y daños y perjuicios.

La demandante apela de una sentencia declarando sin lugar la demanda, dictada en diciembre de 1926 y alega que la corte inferior cometió error:

Primero, al no dar importancia al hecho, que de la prueba aparece, de que la galería cuya destrucción se indicaba por el Departamento de Sanidad, existía desde antes de celebrarse el contrato de arrendamiento entre la demandante y la demandada y era conocida por ésta cuando suscribió tal contrato.

Segundo, al apreciar como cierto que la sanidad había ordenado la clausura de la panadería.

Tercero, al interpretar las cláusulas segunda y cuarta del contrato.

Cuarto, al estimar la prueba en cuanto al hecho de haber sido clausurada la panadería por la sanidad, y no declarar que nunca existió tal clausura.

Quinto, al no declarar que la demandada se halla obligada a devolver a la demandante la finca en buen estado de conservación, y no lo ha hecho.

Sexto, al declarar sin lugar la demanda.

██ El hecho de que se presumiera que los arrendatarios habían visto la galería antes de entrar en el contrato de arrendamiento, no tenía importancia, a menos que de acuerdo con los términos del arrendamiento, o de conformidad con algún principio de derecho, fuera su deber destruir tal galería con el fin de adaptarse a las exigencias de las autoridades sanitarias. La corte inferior no procedió de acuerdo con esa teoría.

 La prueba demuestra que la panadería era usada solamente en ciertas ocasiones, bajo una licencia temporal obtenida con tal fin, y que sin tal licencia no podía ser usada.

La corte inferior admitió que la panadería no había sido clausurada técnicamente, ya que no se había expedido orden alguna a ese efecto. Pero también resolvió que la negativa de expedirle una licencia equivalía prácticamente a clausurar la panadería, porque el resultado era el mismo. No hallamos que se cometiera error a este respecto. El juez sentenciador igualmente interpretó la palabra ''clausurar'' como que se usaba en un sentido más amplio que el alegado por la demandante, y también estamos de acuerdo con este punto de vista.

La tercera cuestión será discutida más tarde. La cuarta es substancialmente una repetición de la segunda en distintas palabras.

Según se indica en el alegato de la apelante, los arrendatarios, hasta el momento del juicio, no habían entregado la finca arrendada. Tampoco estaban ellos en la obligación

de entregarla antes de haber expirado el contrato. El contrato no había vencido cuando los arrendatarios alegaron tener derecho a suspender el pago de los cánones durante el período que la panadería permaneciere cerrada. De existir tal derecho, no había quebrantamiento del contrato ni la obligación de devolver la propiedad en buen estado a la terminación del arrendamiento.

■ Las cláusulas segunda y cuarta del contrato de arrendamiento leen como sigue:

"Segunda: La Sociedad arrendataria cuidará del edificio y de las maquinarias como un diligente padre de familia y se hace responsable de cualquier rotura o desperfecto que sufran dichas maquinarias, siendo de cuenta de dicha arrendataria, cualquier reparación o limpieza que ordene la Sanidad, excepto aquellas que por nuevas leyes de Sanidad exijan un cambio o gasto mayor. Si a consecuencia de estos cambios o composiciones sobreviniera la clausura del edificio, durante esté clausurada, la Sociedad arrendataria no pagará canon alguno, pero si la clausura fuera por culpa o negligencia de dicha sociedad arrendataria, no quedará ésta relevada del pago de dicho canon.

 \* \* \* \* \* \* \*

"Cuarta: La señora Duprey no se compromete a verificar ningún trabajo o arreglo durante el tiempo que dure el arrendamiento, salvo los que fueren necesarios por daños ocasionados por fuerza mayor."

Estas dos cláusulas deben ser interpretadas conjuntamente a la luz de las disposiciones del código relativas a las obligaciones entre arrendador y arrendatario.

En ausencia de estipulación en contrario, el arrendador está obligado a hacer en la finca arrendada "todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada." Artículo 1457 del Código Civil.

El artículo 1461 lee en parte como sigue:

"Si durante el arrendamiento es necesario hacer alguna reparación urgente en la cosa arrendada que no pueda diferirse hasta la conclusión del arriendo, tiene el arrendatario obligación de tolerar la obra, aunque le sea muy molesta, y aunque durante ella se vea privado de una parte de la finca.

"Si la reparación dura más de cuarenta días, debe disminuirse el precio del arriendo a proporción del tiempo y de la parte de la finca de que el arrendatario se vea privado."

Si de acuerdo con la Ley vigente no estuvo en la mente de las partes contratantes el exigir la reconstrucción de la panadería, y por esa razón no se incluyó en los términos del contrato, entonces los derechos y obligaciones respectivas de arrendador y arrendatario deben ser determinados de conformidad con las disposiciones del Código Civil.

La exención contenida en la cláusula cuarta puede ser considerada que alcanza cualquier obligación implícita que surja de las disposiciones contenidas en la cláusula segunda. Pero aún si ello no fuere así, las dos cláusulas no son incompatibles.

Si la arrendadora no tenía obligación alguna de reconstruir el edificio de conformidad con las exigencias de las autoridades sanitarias, es igualmente claro que los arrendatarios asimismo estaban exentos de esa obligación. Además, a los arrendatarios se les relevaba del pago de la renta durante el tiempo que la panadería estuviese cerrada para ser objeto de reparaciones o modificaciones radicales. Al hacerse esta estipulación, es evidente que se tuvo en mente la clausura de la panadería por las autoridades sanitarias, así como la cesasión voluntaria de los negocios. La arrendadora, por tanto, estuvo justificada al rehusar reconstruir el edificio, pero no podía cobrar la renta durante el tiempo que la panadería permaneciere cerrada por haber rehusado las autoridades sanitarias expedirle licencia. Tampoco podía ella exigir la rescisión del contrato por haber los arrendatarios rehusado pagar la renta.

La idea predominante al hacer la reserva en la primera parte de la segunda cláusula es la exención de la obligación de hacer reparaciones costosas al ser requeridas por la Sanidad. La posibilidad de que exigieran la reconstrucción del edificio de conformidad con la ley vigente al tiempo del contrato no parece haber estado en la mente de las partes con-

tratantes. La fraseología de esta exención debe ser considerada conjuntamente con la otra exención sobre el pago de la renta, que es la síntesis de la oración siguiente en la misma cláusula. Esta doble exención tiende a indicar la existencia de una obligación implícita por parte de la arrendadora de efectuar. reparaciones de importancia, como condición precedente al cobro de las rentas en ciertas circunstancias. Tal interpretación está de acuerdo con el espíritu de la segunda cláusula, tomada en conjunto, y también con el del artículo 1457 del Código Civil.

La corte inferior no cometió error alguno al interpretar el contrato de arrendamiento.

La sexta y última cuestión levantada por el señalamiento de errores la somete el apelante fundándose en los argumentos aducidos en apoyo de los cinco señalamientos anteriores. El caso gira principalmente sobre la interpretación de las cláusulas segunda y cuarta del contrato, y la discusión de ciertos detalles de menor importancia revelados por la prueba y discutidos en los alegatos no conducirían a una conclusión distinta.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado señor Texidor no intervino.